UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

            Plaintiff,

v.

D-1 Whitnee Swingrum
D-2 Martell Myrick
D-3 Sharnae Williams,

            Defendants.

_____/

Case: **2:26-cr-20430**
Assigned To : **White, Robert J.**
Referral Judge: **Grand, David R.**
Assign. Date : **7/9/2026**
Description: **INDI USA V. SEALED MATTER (NA)**

Violation:
18 U.S.C. § 1349
18 U.S.C. § 371
18 U.S.C. § 1028A(a)(1)

## INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.    The Social Security Act of 1935 initiated the federal and state unemployment insurance ("UI") system. The system provides benefits to individuals who are unemployed for reasons beyond their control. The purpose of the UI system is twofold: first, to lessen the effects of unemployment through cash payments made directly to laid-off workers, and second, to ensure that life necessities are met on a weekly basis while the worker seeks employment. In the State of Michigan, the

1

unemployment insurance system is administered by the Michigan Unemployment Insurance Agency (the "MUIA"). Other states administer their UI programs through similar state-run agencies. Regardless of the state, the U.S. Department of Labor funds each of the respective state agency's administrative costs, including salaries, office expenses, and computer equipment.  During calendar year 2021 and again in calendar year 2022, the MUIA received in excess of $10,000 under Federal Programs involving grants, subsidies, and other forms of Federal assistance.

2.      The federal government provided significant supplemental benefits to the State of Michigan as a result of the COVID-19 pandemic. Beginning in or around March 2020 and continuing through in or around September 2021, the Families First Coronavirus Response Act ("FFCRA"), the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, and the American Rescue Plan Act of 2021 ("ARPA") created federal programs that allowed for the significant outlay of federal funds flowing to and through the states to offset the historic need for unemployment benefits by the American workforce, including in the state of Michigan and other states. Collectively, these benefits are often referred to as Pandemic Unemployment Assistance ("PUA").

3.      To obtain unemployment assistance in the state of Michigan, a claimant must apply to the MUIA. A claimant may apply by submitting a claim application in person, over the phone, or on the internet through the MUIA's website.

4. For claims filed or accessed via the internet, the MUIA's website captures certain data surrounding the interaction between an individual and the UI system. In Michigan, the UI system is the Michigan Integrated Data Automated System ("MiDAS"). Each time a claim is accessed, MiDAS creates a digital footprint by collecting data, including dates, times, and Internet Protocol ("IP") addresses. This information is tied to the user-entered information for the claim (*e.g.*, name, address, social security number, bank account numbers, etc.).

5. In addition, MiDAS uses certain proprietary algorithms that automatically identify and flag claims that may be fraudulent. Additionally, employees who review claims can review claims and conclude that the payments may be involved in fraud and take action to stop payment of the claims.

6. To inhibit internal fraud, the MUIA also captures certain internal data surrounding the interaction between State of Michigan employees and MiDAS. MiDAS maintains an "audit trail," which details any insider who touches, alters, or otherwise modifies a claim. The MUIA can attribute an insider's actions to a particular individual, as each employee has a unique credential. Further, the MUIA maintains workflow logs for its employees that detail which claims are assigned to which employee. The data that MUIA captures can be reviewed to discern whether insiders had a legitimate reason to access or modify a claim.

7.     To qualify for UI benefits, the claimant must demonstrate a certain level of earnings in several quarters immediately preceding the application. The amount of unemployment benefits for which a claimant qualifies depends on a variety of factors, including but not limited to, the length of his or her previous employment and the amount of wages he or she earned. Employers receive statements of benefit charges for any UI claimants charged or credited against the employer's account. Employers may protest former employees' UI claims when they believe that the former employee is not eligible to receive UI benefits.

8.     The MUIA will either approve or reject a UI claim based on the application and information provided by the claimant. If the MUIA approves a UI claim, the claimant must re-certify his or her continued eligibility for assistance via telephone or the internet at regular intervals in order to continue to receive assistance.

9.     A claimant can elect to receive UI benefits either through a prepaid debit card (a "UI debit card") issued by Bank of America and US Bank, or direct deposit into a bank account identified by the claimant. Additional UI benefits are then electronically loaded onto the UI debit cards or directly deposited electronically into the claimant's bank account at intervals thereafter based on the claimant's selection.

10.     The transfer of UI benefits, whether onto a UI debit card or into a claimant-provided bank account, involves the transmission of electronic signals to and from data centers, which are located outside of Michigan. As a result, UI benefit claims filed in Michigan result in interstate wire transmissions to pay out UI benefits.

## COUNT ONE
### 18 U.S.C. § 1349
*Conspiracy to Commit Wire Fraud*

D-1 Whitnee Swingrum
D-2 Martell Myrick
D-3 Sharnae Williams

11.     Paragraphs 1 through 10 of this Information are realleged and incorporated by reference as though fully set forth herein.

12.     From in or around February 2021 and continuing through in or around October 2021, the exact dates being unknown, in the Eastern District of Michigan and elsewhere, defendant WHITNEE SWINGRUM did willfully and knowingly combine, conspire, confederate, and agree with MARTELL MYRICK, SHARNAE WILLIAMS, and others, known and unknown, to violate 18 U.S.C. § 1343, that is, to devise and execute a scheme and artifice to defraud the MUIA and to obtain money and property, namely state and federal UI benefit money, by means of false and fraudulent pretenses, representations and promises, all in violation of 18 U.S.C. § 1349.

13. For purposes of executing and attempting to execute the scheme, defendants WHITNEE SWINGRUM, MARTELL MYRICK, SHARNAE WILLIAMS did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals and sounds, in violation of 18 U.S.C. § 1343.

## Purpose of the Conspiracy

14. It was the purpose of the conspiracy for defendants WHITNEE SWINGRUM, MARTELL MYRICK, and SHARNAE WILLIAMS to unlawfully enrich themself and others by causing the MUIA to issue UI benefits on fraudulent UI claims.

## Manner and Means of the Conspiracy

The manner and means by which the conspirators sought to accomplish the purpose of the conspiracy included, among other things:

15. Defendant WHITNEE SWINGRUM was an employee and agent of the MUIA, an agency of the State of Michigan. Defendant SWINGRUM was assigned work items within the workflow systems, using State of Michigan equipment and the MiDAS system.

16. It was part of the conspiracy that defendant WHITNEE SWINGRUM used her position with the MUIA to access, without authorization, UI claims that were referred to her by co-conspirator MARTELL MYRICK.

17.    It was part of the conspiracy that co-conspirators, including MARTELL MYRICK and SHARNAE WILLIAMS, fraudulently filed and controlled UI claims within the MUIA system. Many of these claims had been flagged by the MUIA for various reasons, including potential fraud, and identity verification, which stopped payments on the claims. MYRICK communicated via telephone with SWINGRUM to access certain claims based on name of claimant, or social security number. Many of these claims were of unknowing victims who had their identity stolen.  SWINGRUM directed MYRCK to upload certain documents to receive payment. MYRICK and WILLIAMS would then upload the needed documents.

18.    It was further part of the conspiracy that defendant WHITNEE SWINGRUM would then re-access the claims and approve them for payment. SWINGRUM took actions on these claims referred to her by co-conspirator MARTELL MYRICK, outside the scope of her assigned duties, to allow payment, including removing stop-payment holds without authorization. In doing so, defendant WHITNEE SWINGRUM circumvented MUIA processes and procedures designed to investigate claim and/or claimant eligibility before the release of payment, which falsely presented the claim and/or claimant as being eligible when the claim and/or claimant had not been deemed eligible and had in fact been flagged

7

for further investigation before payment was released, which did not fully occur because of Defendant SWINGRUM's actions to remove the stop-payment holds.

19.   It was a further part of the conspiracy that defendant WHITNEE SWINGRUM's actions caused UI funds to be misappropriated and fraudulently delivered to MARTELL MYRICK and SHARNAE WILLIAMS. MARTELL MYRICK and SHARNAE WILLIAMS received the UI funds either on a UI debit card or by direct deposit, which involved interstate wire communications.

20.   It was part of the conspiracy that, in exchange for her assistance with the fraudulent UI claims, co-conspirator MARTELL MYRICK provided monetary compensation to defendant WHITNEE SWINGRUM.

21.   It was further part of the conspiracy that defendant WHITNEE SWINGRUM used various methods to communicate with co-conspirator MARTELL MYRICK in furtherance of the scheme, including cellphone text messages and calls, which involved interstate wire communications.

22.   It was further part of the conspiracy that defendant MARTELL MYRICK used various methods to communicate with co-conspirator SHARNAE WILLIAMS in furtherance of the scheme, including cellphone text messages and calls, which involved interstate wire communications.

All in violation of Title 18, United States Code, Section 1349.

8

## COUNT TWO
### 18 U.S.C. § 371
*Conspiracy to Commit Bribery Concerning a Program Receiving Federal Funds*

D-1 Whitnee Swingrum
D-2 Martell Myrick
D-3 Sharnae Williams

23.    Paragraphs 1 through 22 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

### Object of the Conspiracy

24.    From in or around February 2021 and continuing through approximately October 2021, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan and elsewhere, Defendants MARTELL MYRICK, WHITNEE SWINGRUM, and SHARNAE WILLIAMS did unlawfully, willfully and knowingly combine, conspire, confederate, and agree with each other , and with others, known and unknown to the Grand Jury, to commit an offense against the United States, namely Federal Program Bribery, that is, to corruptly give, offer, and agree to give and to solicit, accept and agree to accept something of value to and by an agent of a State government, , with the intent to influence and reward and the intent to be influenced and rewarded in connection with business, a transaction, and series of transactions of the State of Michigan, involving a value of $5,000 or more, in violation of 18 U.S.C. § 666(a)(2).

9

## Manner and Means of the Conspiracy

The manner and means by which the conspirators sought to accomplish the purpose of the conspiracy included, among other things:

25.    Claimants filed UI claims with the MUIA that were flagged by the MUIA for various reasons to stop unentitled payment, such as potential fraud, employer disputes, and/or non-monetary issues.

26.    It was part of the conspiracy that MYRICK AND WILLIAMS referred fraudulent UI claims to SWINGRUM to push the claims through for payment.

27.    It was part of the conspiracy that MYRICK agreed to provide money and/or things of value to SWINGRUM in order to bribe SWINGRUM for using her position to manipulate claimant accounts to allow payment on flagged and fraudulent claims.

28.    It was a part of the conspiracy that Swingrum agreed to accept money and/or things of value as bribes in exchange for using her position to manipulate claimant accounts to allow payment on flagged and fraudulent claims.

29.    It was part of the conspiracy that SWINGRUM, acting outside the scope of her duties, accessed and took action without authorization to allow payment on flagged claims that were referred to her by MYRICK and WILLIAMS, which circumvented MUIA processes and procedures to designed to investigate claim and

claimant eligibility, which falsely presented the claim and/or claimant as being eligible when the claim and/or claimant had not been deemed eligible.

30. It is further part of the conspiracy that MYRICK and WILLIAMS received fraudulent and misappropriated UI funds from claims approved by SWINGRUM on a UI debit card or by direct deposit.

## **Overt Acts**

In furtherance of the unlawful conspiracy, and to effect its objectives, the conspirators committed the following overt acts, among others:

31. SWINGRUM agreed to assist MYRICK and WILLIAMS in processing the fraudulent UI claim of S.R., whose identity is known to the Grand Jury.

a. On or about July 20, 2021, SWINGRUM accessed S.R.'s UI claim in MiDAS and issued a redetermination of income based on income receipts previously uploaded to the MiDAS which lifted the order not to process the UI claim.

b. On or about September 3, 2021, SWINGRUM accessed S.R.'s UI claim in MiDAS and added a new contact phone number for authentication of the account.

c. On or about September 10, 2021, SWINGRUM accessed S.R.'s UI claim in MiDAS and discarded a pending fraud investigation hold on the account, thereby removing the stop payment hold and authorizing payment of the fraudulent claim.

32. From at least in or around approximately February 2021, to at least in or around October 2021, SWINGRUM corruptly accepted about $10,000 from MYRICK intending to be influenced or rewarded in connection with a transaction or a series of transactions, of the State of Michigan Unemployment Insurance Agency.

33. MYRICK and WILLIAMS approximately $250,000 between February 2021 and October 2021 from fraudulent UI benefits whose claims SWINGRUM accessed and acted on outside the scope of her duties to allow payment.

34. MYRICK benefited from SWINGRUM's actions to authorize payment on S.R.'s fraudulent UI claim. On September 10, September 11, September 14, and September 15, 2021, MYRICK used a US Bank UI debit card issued in S.R.'s name to withdraw funds from an ATM.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE
### 18 U.S.C. § 1028A(a)(1)
*Aggravated Identity Theft*

D-2 Martell Myrick

35. The allegations contained in paragraphs 1 through 34 are incorporated herein by reference as if fully set out in full.

36.     On or about September 7, 2021, in the Eastern District of Michigan, the defendant MARTELL MYRICK, during and in relation to an offense enumerated in 18 U.S.C. § 1028A(c)—that is, Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, as alleged in Count One—did knowingly and intentionally possess and use, without lawful authority, a means of identification of another person, that is a UI debit card related to a Michigan UI claim issued in the name of J.M. whose identity is known to the grand jury, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT FOUR
### 18 U.S.C. § 1028A(a)(1)
*Aggravated Identity Theft*

D-2 Martell Myrick

37.     The allegations contained in paragraphs 1 through 36 are incorporated herein by reference as if fully set out in full.

38.     On or about September 15, 2021, in the Eastern District of Michigan, the defendant MARTELL MYRICK, during and in relation to an offense enumerated in 18 U.S.C. § 1028A(c)—that is, Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, as alleged in Count One—did knowingly and intentionally possess and use, without lawful authority, a means of identification of another person, that is a UI debit card related to a Michigan UI claim issued in the name of

13

C.B. whose identity is known to the grand jury, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE ALLEGATIONS

39.   The allegations contained in this Information are realleged and incorporated by reference to allege forfeiture under Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(5), and Title 28, United States Code, Section 2461(c).

40.   Upon being convicted of the offense in violation of Title18, United States Code, Section 1349, the defendant shall forfeit to the United States, under Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, any property, which constitutes, or is derived from, proceeds obtained directly or indirectly as a result of such violation.

41.   The forfeiture in this case may include entry of a forfeiture money judgment in an amount up to the value of the property subject to forfeiture for the violations of conviction.

42.   If, by any act of omission of the defendant, the proceeds of the offenses: cannot be located upon the exercise of due diligence, have been transferred, sold to, or deposited with a third party, have been placed beyond the jurisdiction of the court, have been substantially diminished in value, or have been commingled with other

property which cannot be divided without difficulty, the United States of America shall seek to forfeit substitute property under Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

THIS IS A TRUE BILL

*s/ Grand Jury Foreperson*
GRAND JURY FOREPERSON

JEROME F. GORGON, Jr
United States Attorney

*s/ John K. Neal*

John K. Neal
Chief, Anti-Corruption Unit

*s/ Robert A. Moran*

Robert A. Moran
Assistant United States Attorney

Dated: July 9, 2026

**United States District Court**
**Eastern District of Michigan**

**Criminal Case C**

Case: **2:26-cr-20430**
Assigned To : **White, Robert J.**
Referral Judge: **Grand, David R.**
Assign. Date : **7/9/2026**
Description: **INDI USA V. SEALED MATTER (NA)**

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to c

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes    ☒ No | **AUSA's Initials:**  R.A.M. |

**Case Title:** USA v.  Swingrum et al

**County where offense occurred :**  Wayne County

**Check One:**    ☒ Felony          ☐ Misdemeanor          ☐ Petty

__✓__ Indictment/_____Information --- **no** prior complaint.
_____Indictment/_____Information --- based upon prior complaint [**Case number:**                      ]
_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

July 9, 2026
Date

s/Robert A. Moran

Robert A. Moran
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9553
E-Mail address: robert.moran@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/16